**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
PHILIP BLESSINGER, SCOTT GRECO, and
JOHN BYRNE,

                            Plaintiffs,

            -against-

CITY OF NEW YORK, CYRUS R. VANCE, JR., in his
individual and official capacity as District Attorney of the
New York County District Attorney's Office, JODIE
KANE, in her individual and official capacity as Assistant
District Attorney; MICHAEL OHM, in his individual and
official capacity as Assistant District Attorney,
CHRISTOPHER SANTORA, in his individual and official
capacity as Assistant District Attorney, BRYAN SERINO,
in his individual and official capacity as Assistant District
Attorney, and VIMI BHATIA, in her individual and
official capacity as Assistant District Attorney.

                           Defendants.
-----------------------------------------------------------------------X

       **Civil Action No.:**

       <u>**VERIFIED COMPLAINT**</u>

       ***Jury Trial is Demanded***

       PLAINTIFFS, PHILIP BLESSINGER, SCOTT GRECO, and JOHN BYRNE, by and through

their attorney, Jacob Z. Weinstein, Esq., providing upon information and belief, the following Verified

Complaint and state and allege as follows:

<u>**PRELIMINARY STATEMENT**</u>

       1.      This is a civil action brought due to Defendants' abuse of process, gross negligence, and

violations of Plaintiffs' rights pursuant to 42 U.S.C. § 1983; the rights secured by the Fourth, Fifth, and

Fourteenth Amendments of the United States Constitution; and those rights secured under the New York

State Constitution, Article I, Sections 11 and 12, and the common law of the State of New York.  Plaintiffs

seek monetary relief, compensatory and punitive damages, disbursements, costs and fees, and such other

relief as this Court deems equitable and just.

2.      The first and foremost duty of a prosecutor is to pursue justice.  Justice was not done.  In the instant matter, the entirety of the Defendants investigation and process of bringing criminal charges against Plaintiffs was not simply erroneous, but outright wrong.  All of the Plaintiffs have significant health issues and Defendants wantonly and directly exacerbated Plaintiffs health issues with each action and inaction Defendants took.

3.      Plaintiffs were indicted by the New York County District Attorney's Office, an agency of the City of New York, on January 7, 2014 along with 103 other individuals. Plaintiffs were each charged with one count of Grand Larceny in the Second Degree and one count of Criminal Facilitation in the Fourth Degree.  Plaintiffs were at all times absolutely and completely innocent of any crimes and any reasonable prosecutor conducting an investigation would have realized it.  That being said, Defendants (collectively and individually) affirmatively dismissed the indictment against Plaintiffs on August 30, 2016, nearly three years later.

4.      Specifically, the Plaintiffs allege that the Defendants (collectively and individually) negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiffs of their Constitutional rights, pursuant to the above-mentioned statutes and causes of action by committing acts under color of law and depriving the Plaintiffs of rights secured by the United States Constitution, Federal law, New York State Constitution and laws of the State of New York.

5.      Plaintiffs allege that Defendants (collectively and individually), their agents, employees and servants unlawfully and under color of law harassed, unlawfully seized, and illegally detained Plaintiffs and their property.

6.      Plaintiffs allege that the Defendants (collectively and individually) abused the power and rights given to Defendants (collectively and individually) in their capacities as public servants and members of the New York County District Attorney's Office.

2

7.    Defendants (collectively and individually) were grossly negligent and/or intentionally and recklessly breached their duties of care and duties to intervene with respect to the interactions with and treatment of Plaintiffs as described herein.

8.    Plaintiffs further allege that Defendants City of New York and Cyrus R. Vance, Jr. were negligent in training, hiring, and supervising Assistant District Attorneys, employees, representatives, and/or agents. Further, Plaintiffs allege that Defendants City of New York and Cyrus R. Vance, Jr. were deliberately indifferent to the need to train their Assistant District Attorneys.

9.    Instead, Defendants (collectively and individually) included Plaintiffs in a publicity case without a proper investigation, thereby failing to fulfil their duty to the public to which they have sworn to serve.

10.    Accordingly, Defendants City of New York and Cyrus R. Vance, Jr. (collectively and individually) are liable to the Plaintiffs for abuse of process, malicious prosecution, for condoning and encouraging such civil rights violations and for maliciously failing to investigate and punish the actions of the Individual Defendants.

11.    As a result of the Defendants' actions (collectively and individually), Plaintiffs suffered violations of their constitutionally protected rights; physical and emotional pain and suffering; significant economic injury and harm; and were caused to undergo additional and significant medical treatment for emotional injuries that they sustained at the hands of the Defendants.

## **JURISDICTION AND VENUE**

12.    This action is being brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

13.    The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

14.     This court is requested to exercise supplemental jurisdiction with respect to Plaintiffs New York State claims pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case and controversy.

15.     Venue in the Southern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the place where the events and violations herein alleged occurred was in The City of New York, New York County and at least one of the Defendants resides in the Southern District.

## NOTICE OF CLAIM

16.     There are currently three Orders to Show Cause regarding permission to file Late Notice of Claims pending in New York County Supreme Court, before the Honorable James d'Auguste.  The matters are:

    i.   Philip Blessinger v. The City of New York, Index No. 159377/2016;

    ii.  Scott Greco v. The City of New York, Index No. 159691/2016; and

    iii. John Byrne v. The City of New York, Index No. 159889/2016.

17.     These matters have been adjourned to January 12, 2017.

18.     Each Order to Show Cause was filed within 90 days of August 30, 2016.  Moreover, due to the extensive publicity and improper investigation, as well as wrongful unenforceable waivers involved in this matter, New York City had notice of claim *nunc pro trunc*.

## PARTIES

19.     Plaintiff PHILIP BLESSINGER (hereinafter "MR.  BLESSINGER") is a sixty-six (66) year old male who currently resides in Martin County, Florida.

20.     Plaintiff SCOTT GRECO (hereinafter "MR. GRECO") is a fifty-two (52) year old male who currently resides in Staten Island, New York.

21.     Plaintiff JOHN BYRNE (hereinafter "MR BYRNE") is a fifty (50) year old male who currently resides in Queens, New York.

22.     MR. BLESSINGER, MR. GRECO, and MR. BYRNE are hereinafter collectively referred to as PLAINTIFFS.

23.     Defendant CITY OF NEW YORK (hereinafter "NEW YORK CITY" or "DEFENDANT CITY") is a duly constituted municipal corporation of the State of New York.  Pursuant to the New York City Charter, NEW YORK CITY formed and has direct authority over several different departments including the New York County District Attorney's Office (hereinafter "DA's OFFICE"), in that the DA's OFFICE is considered an agency under the New York City Charter.  The aforementioned department and/or employees, agents, or representatives of the DA's OFFFICE are directly involved in violations that are at issue in this Complaint.

24.     Defendant CYRUS R. VANCE, JR. (hereinafter "DA VANCE") is a duly elected District Attorney of New York County to run and oversee the DA's OFFICE since 2010.

25.     Defendant JODIE KANE (hereinafter "ADA KANE") is the Chief of the Rackets Bureau within the DA's Office.  Upon information and belief, her duties are to oversee and investigate matters which fall within racketeering.  ADA KANE is in a high level supervisory role.

26.     Defendant MICHAEL OHM (hereinafter "ADA OHM") is the Deputy Chief of the Rackes Bureau within the DA's Office.  Upon information and belief, ADA OHM had a direct and involved role in PLAINTIFFS prosecution.

27.     Defendant CHRISTOPHER SANTORA (hereinafter "ADA SANTORA") was one of two Assistant District Attorney's prosecuting PLAINTIFFS.  Upon information and belief, ADA SANTORA reported to DA VANCE, ADA KANE, and ADA OHM.

28.     Defendant BRYAN SERINO (hereinafter "ADA SERINO") was one of two Assistant District Attorney's prosecuting PLAINTIFFS. Upon information and belief, ADA SERINO reported to DA VANCE, ADA KANE, and ADA BROWNELL.

29.     Defendant VIMI BHATIA (hereinafter "ADA BHATIA") is an Assistant District Attorney and Senior Investigative Counsel and Deputy Chief of the Asset Forfeiture Unit.  Upon information and belief, ADA BHATIA was in charge of asset forfeiture in the matter against PLAINTIFFS.

30.     Defendants' mentioned in paragraphs 23-29 are hereinafter collectively referred to as DEFENDANTS.

31.     Defendants' mentioned in paragraphs 24-29 are hereinafter collectively referred to as INDIVIDUAL DEFENDANTS.

## FACTUAL ALLEGATIONS

32.     On January 7, 2014, the DEFENDANTS indicted 106 individuals under indictment 201-2014.

33.     Upon information and belief, DEFENDANTS were so caught-up in the publicity aspect of indicating 106 defendants, including 80 former members of the New York City Police Department and New York City Fire Department that they knowingly and willfully ignored and overlooked the actual innocence of the PLAINTIFFS for close to three years.

34.     Had any proper investigation been conducted, PLAINTIFFS would never have been indicted.  Moreover, PLAINTIFFS' prosecution was knowingly wrong prior to its initiation until ultimate dismissal on August 30. 2016. Although the primary targets were properly indicted, PLAINTIFFS were merely swept up due to unwittingly and innocently associating themselves with bad apples.

35.     Upon information and belief, each of the PLAINTIFFS were absolutely qualified for Social Security Disability.  The PLAINTIFFS inclusion with the other individuals was and is completely and

utterly due to the negligence and intentional lack of oversight by the DEFENDANTS as well as a willful and/or negligent failure to investigate.  DEFENDANTS paraded PLAINTIFFS in-front of the media wishing to obtain positive publicity.  Moreover, DEFENDANTS ignored the individual aspect of actual innocence involving PLAINTIFFS.

36.     Upon information and belief, DEFENDANTS initial investigation was deficient to such an extent that they sent additional investigators to PLAINTIFFS' neighborhoods months after the indictment.

37.     Upon information and belief, DEFENDANTS manufactured jurisdiction by establishing, in conjunction with a Social Security Agent, a PO Box within the confines of New York County.

38.     Upon information and belief, DEFENDANTS had never received the original actual signed and submitted disability paperwork.  This is the same paperwork DEFENDANTS claimed to set the foundation for PLAINTIFFS prosecution.

39.     **PLAINTIFFS have been victimized twice**, once by Raymond Lavallee, Joseph Esposito and Thomas Hale (the primary indicted defendants), whom PLAINTIFFS mistakenly and innocently trusted as all were former members of service.  Then, and most lasting, victimized by the DEFENDANTS in their utter lack of a proper investigation and/or care of PLAINTIFFS rights.

40.     **At no point** did PLAINTIFFS seek out Hale or Lavallee for any illegitimate purpose.  At all relevant times, PLAINTIFFS were duped into believing that Hale and Lavallee were legitimate attorneys who were honest and upstanding.

41.     Because of DEFENDANTS grossly improper, negligent, illegal, wanton conduct occurring under color of law, PLAINTIFFS have suffered severely.  Each PLAINTIFF has lost hundreds of thousands of dollars in legal fees and other debt, incurred because of wrongful and improperly frozen assets.

42.     Upon information and belief, DEFENDANTS actively made efforts to terminate and bar PLAINTIFFS from continued and rightful Social Security Disability benefits.

43.     But for DEFENDANTS egregious conduct, PLAINTIFFS would not have lost their Social Security Disability benefits, to which they are properly and rightfully entitled to.

44.     Upon information and belief, PLAINTIFFS have been unable to obtain rightful Social Security Disability benefits due to DEFENDANTS' actions.   Moreover, PLAINTIFFS families have suffered significantly due to the DEFENDANT'S actions.

45.     While some facts are shared and the DEFENDANTS are the same, each of the PLAINTIFFS have their own additional unique facts.

### PHILIP BLESSINGER

46.     MR. BLESSINGER has been absolutely unable to work since 2006 due to his mental and physical health issues.   Among his many health issues are: bodily injuries sustained from on-the-job incidents, chronic knee and back pain, and psychogenic non-epileptic seizures associated with anxiety and panic disorders, and often triggered by PTSD symptoms.

47.     From 1968 to 1972, MR. BLESSINGER worked as a New York City Police Officer; from 1972 to 1991, he was a Nassau County Police Officer.   In 1987, MR. BLESSINGER was awarded the rank of Sergeant, thereafter he oversaw an Anti-Crime unit. Additionally, in 1989, MR. BLESSINGER graduated from the prestigious FBI National Academy.

48.     MR. BLESSINGER was a first responder to the 1990 Avianceae plane crash in Nassau County, where there were multiple fatalities on scene and a horrific sight to behold.

49.     In 1990, MR. BLESSINGER was struck by a stolen vehicle, while attempting to effectuate an arrest of those who stole the vehicle.   Upon significant bodily injury, MR. BLESSINGER was placed on desk duty in order recover.   However, in 1991, while attempting to secure a violent prisoner in his

precinct, MR. BLESSINGER was again physically injury.   These injuries ultimately forced MR. BLESSINGER into retirement.

50.     From 1991 until mid-2005, MR. BLESSINGER worked as a fraud investigator for various companies.  Among his duties at varying points was to investigate insurance fraud.

51.     However, in late-2005, MR. BLESSINGER began to experience severe emotional and mental health issues, in addition to his ever-present physical ailments.  These included, but are not limited to: irritability, inability to focus, anger, severe anxiety, disorientation in that he did not know where he was at times, and severe depression.

52.     With both the physical and emotional aspects working together against him, MR. BLESSINGER was forced to leave his job and has been unable to work since 2006, in any capacity.  MR. BLESSINGER was placed on a multitude of medications relating to his mental and physical disability by his treating physicians.

### THE HALE AND LAVALLEE SCHEME / VICTIMIZING MR. BLESSINGER

53.     MR. BLESSINGER has known Raymond Lavallee for over twenty (20) years and has used him as an attorney on occasion.  MR. BLESSINGER believed Lavallee had a very limited  practice area involving Social Security Disability.  Additionally, Lavallee was a known retired FBI agent and former Nassau County Assistant District Attorney, who did regular work for police unions.

54.     On or about and between the mid-2005 to mid-2006, MR. BLESSINGER met Raymond Lavallee at a local police bar known as The Courthouse. Lavallee was a regular there, as was MR. BLESSINGER.

55.     During the regular course of conversation, MR. BLESSINGER mentioned his ailments in passing to Lavallee.  Lavallee suggested they meet for lunch, which they did at the Garden City Hotel (MR. BLESSINGER was left holding the check).     Thereupon, Lavallee suggested that MR.

BLESSINGER call his "associate" Thomas Hale and it was suggested that he go to Doctor Sodaro for an evaluation.  MR. BLESSINGER was given the impression that Hale was a lawyer.  Lavallee said the cost would be $10,000.00 to Hale.  MR. BLESSINGER had no reason to believe Lavallee or Hale were fraudsters.

56.    MR. BLESSINGER called Hale, who asked to meet him in his "office," which was in Hale's home.  Upon meeting Hale, MR. BLESSINGER was given blank HIPPA and Social Security Disability forms and told to sign the bottom of said form.  Hale then informed MR. BLESSINGER that he had specialized knowledge of the Social Security Disability application process and if MR. BLESSINGER was eligible, he would be awarded Social Security Disability.

57.    MR. BLESSINGER never saw the submitted Social Security Disability forms and was not contacted again by anyone until February of 2008.  Thereupon, the Social Security Administration called MR. BLESSINGER who then met with Social Security Psychologist by the name of Dr. Kathleen Acer. Dr. Acer asked MR. BLESSINGER if he saw a Social Security Physician for his many medical issues. MR. BLESSINGER replied no and Dr. Acer replied in sum and substance: "you probably won't have to."

58.    In April of 2008, MR. BLESSINGER was awarded Social Security Disability.  MR. BLESSINGER noted that his wife was listed as a payee representative and called Hale.  Hale dismissed the concern by telling MR. BLESSINGER not to worry about it.

59.    Lavallee took approximately $5,200.00 in awarded back-pay from Social Security.

60.    After taking this money from MR. BLESSINGER, Lavallee told him to pay Hale $10,000.00.   MR. BLESSINGER was surprised, as he thought the $10,000.00 was for both Hale and Lavallee.

61.    MR. BLESSINGER sent a check to Hale in the amount of $10,000.00.  Thereafter, MR. BLESSINGER received an envelope with Hale's check torn to pieces.  Lavallee then called MR.

BLESSINGER to tell him Hale is to be paid in cash.  Not questioning his long-time acquaintance, MR. BLESSINGER paid Hale in cash by dropping off $10,000.00 directly to Hale.  When MR. BLESSINGER asked Hale if he wished to count the money, Hale responded that he trusted MR. BLESSINGER.

CONTINUING DISABILITY AND MANUFACTURED EVIDENCE

62.    In 2010, MR. BLESSINGER'S health took a turn for the worse; MR. BLESSINGER developed seizures associated with anxiety and panic disorders.

63.    In September of 2013, MR. BLESSINGER received a manufactured and altered Social Security Continuing Disability Review Report form with a return address to a New York County PO Box. The form was mailed from the proper Queens County office, yet was returnable to a New York County PO Box.

64.    MR. BLESSINGER called Hale for advice (this call was recorded as per a wire-tap on Hale's phone) as neither Hale or Lavallee had mentioned what to do about filling any subsequent forms. Subsequently, Hale and MR. BLESSINGER met to fill out the form.  MR. BLESSINGER immediately noticed that Hale was not filling out the form properly, in that he was overstating MR. BLESSINGER'S injuries.

65.    MR. BLESSINGER, **wishing to be honest** and to avoid conflict with Hale, had his wife change the mistakes after his meeting with Hale.  Such mistakes were: that MR. BLESSINGER could not drive, or lift weights at all.  MR. BLESSINGER corrected this to reflect that he could drive, in a limited capacity and could lift weights, but that he suffered pain if he did.

MR. BLESSINGER IS ARRESTED

66.    By January of 2014, MR. BLESSINGER had moved to Florida.  On January 7, 2014, MR. BLESSINGER was arrested by the fugitive unit in Florida, on a Fugitive Warrant issued from an ex-parte indictment from DEFENDANTS.

67. Multiple law enforcement agencies including Martin County Sheriff's Department, U.S. Marshalls, Homeland Security and Social Security OIG surrounded MR. BLESSINGER'S home, in a gated community, armed with assault rifles at 6:00 in the morning on the day of his arrest.

68. MR. BLESSINGER was taken to the county jail where he spent 36 hours in lock-up and suffered a significant seizure, due to his anxiety disorder and the refusal of the county to provide him proper medication.  Prior to his arrest, MR. BLESSINGER'S seizures were under control, however since the arrest MR. BLESSINGER continues to suffer from anxiety related seizures.

69. As a fugitive awaiting extradition, MR. BLESSINGER was surprised to find himself released on his own recognizance.

70. Upon information and belief, DEFENDANTS, wishing for more media coverage, wanted MR. BLESSINGER present sooner-than-later.  As such, MR. BLESSINGER actually paid for his own flight so that he could be re-arrested in New York.  Such conduct is unheard of when dealing with alleged fugitives.

71. MR. BLESSINGER and his wife subsequently submitted themselves to the DEFENDANTS for a proffer, in October of 2014 and February of 2015 respectively.

72. Shockingly, DEFENDANTS apparently only truly started their investigation of MR. BLESSINGER five (5) months after he was indicted.

73. On May 14, 2014, the DA's OFFICE sent B. Sam Ahdout (Senior Investigator, Investigator Bureau) to question MR. BLESSINGER'S Florida neighbors.

74. In October of 2014, ten months after being indicted, the DA's OFFICE had further investigators question MR. BLESSINGER'S tenant, cousin, and neighbors in New York.

75. DEFENDANTS further froze MR. BLESSINGER'S accounts, and illegally froze Mrs. Blessinger's personal 401K and their daughter's account.  MR. BLESSINGER'S assets were frozen from

12

January 2014 until April of 2014, thereafter he posted $167,967.00, money he did not have and had to borrow, against savings, as MR. BLESSINGER sold stocks and bonds, and had his daughter liquidize mutual funds. As such, MR. BLESSINGER faced additional significant expenses due to capital gains, stock losses, and the obvious loss of income as a result of liquidizing funds in the DEFENDANTS' escrow account in order to unfreeze his assets. This money was held until mid-September 2016.  This caused MR. BLESSINGER great economic harm.

76.     Overall, DEFENDANTS' actions cost MR. BLESSINGER approximately $150,000.00 in out of pocket expenses.

**DISMISSAL AND WAIVER**

77.     On August 30, 2016, DEFENDANTS affirmatively dismissed all counts against MR. BLESSINGER.

78.     At the same time, DEFENDANTS, via ADA BHATIA gave MR. BLESSINGER'S attorney a stipulation that was to be a dismissal of the forfeiture action.  In truth, this document contained a paragraph regarding waving the rights to pursue a Civil Rights matter or any legal action, against the DEFENDANTS.

79.     MR. BLESSINGER'S attorney gave said document to him.  MR. BLESSINGER did not know what he was signing nor any other significance of the document, other than it would result in a dismissal of his civil forfeiture case.  Unbeknownst to MR. BLESSINGER, the civil forfeiture matter would be dismissed due to the criminal dismissal anyway.

80.     MR. BLESSINGER did not know or actually understand what he was signing at the time he was signing it. Had he known what it was, he would never have signed it.

81.     MR. BLESSINGER maintained his absolute innocence throughout the wrongful prosecution of this action.

82.     MR. BLESSINGER has been and is currently taking significant medications to cope with and endure the serious emotional and phycological trauma he has suffered at the hands of the DEFENDANTS.   Some of these medications are:   Protonix; Clonazepam; Bupropion; Lisinopril; Topiramate; Zolpidem; Escitalopram; Alprazolam; and Diazepam.

83.     The DEFENDANTS did not do their proper due-diligence or investigation into this matter. Rather, in a frenzy and excitement for public attention MR. BLESSINGER was wrongly and improperly swept-up.   His civil rights were violated and both MR. BLESSINGER mental and physical health has suffered significantly.

84.     The malicious prosecution, gross negligence, abuse of process, carelessness, resulting in physical and emotions damages, and embarrassment all of which resulted directly from the actions of the DEFENDANTS' abuse of the criminal process against the MR. BLESSINGER.

### SCOTT GRECO

85.     MR. GRECO has been absolutely unable to work since 2008 due to physical back pain and mental health issues.   Some of MR. GRECO'S health issues are: symptoms consistent with PTSD, anxiety, depression, and hypertension.

86.     From 1984 to 2003, MR. GRECO worked for the New York City Police Department as a Police Officer, in Anti-Crime, Brooklyn South Narcotics, the Detective Squad, and a Sergeant.

87.     While not assigned to Ground-Zero, MR. GRECO volunteered his off-duty time in order to hand out refreshments and help out in any way to those conducting the recovery.   Within a short period after the terrorist attacks, MR. GRECO'S father became ill and passed away, this further compounded MR. GRECO'S illness.

88.     After retirement in 2003, MR. GRECO attempted to run his own business until 2006.   This endeavor failed due to MR. GRECO'S health issues.

89.     From 2006 to 2008, MR. GRECO worked with and invested in Champion Vending.  MR. GRECO also invested a significant amount of his savings into Champion Vending.  However, in 2008, he was unable to continue to work there due to his continued mental and physical health ailments.  Nevertheless, MR. GRECO would stop by Champion Vending in order to obtain monies owed to him by its owner.

90.     With both the physical and emotional aspects working together against him, MR. GRECO has been unable to work since 2008, in any capacity.  MR. GRECO was placed on a multitude of medications relating to his mental and physical disability by his treating physicians.

## MR. GRECO IS VICTIMIZED

91.     In the end of 2009, MR. GRECO met with Michael D'Martino, a friend he had known since the police academy.  Mr. D'Martino suggested that MR. GRECO see Doctor Sodaro as well as Hale.

92.     MR. GRECO contacted Hale and went to his home, which he believed to be Hales office as well.  MR. GRECO was under the impression that Hale was a lawyer.  At this point, MR. GRECO did not know of and did not meet Lavallee.

93.     Hale told MR. GRECO, in sum and substance: if you get Social Security Disability, we get the back pay in cash, otherwise, we'll do it for free.

94.     On April 10, 2010, MR. GRECO returned to Hale with the requisite Social Security Administration Disability Application.  MR. GRECO completed the documents at Hale's home, signed them and some other papers which were blank and left it all with Hale.

95.     Upon information and belief, Hale altered the application without any knowledge from MR. GRECO; MR. GRECO never saw the final submission of the application.

96.     On or about May 8, 2010, MR. GRECO properly reported to a Social Security approved physician for an Independent Medical Examination.

97.     On or about June 17, 2010, MR. GRECO received word that he was approved to get the Social Security Disability.

98.     As per Hale's instructions, MR. GRECO pulled out cash from the account in order to pay Hale in cash.

**CONTINUING DISABILITY AND MANUFACTURED EVIDENCE**

99.     On June 6, 2011, MR. GRECO was at Champion Vending, as was normal for him to spend time there and collect the money owed to him, when MR. GRECO was approached by Social Security Agent Dowd.

100.    Dowd asked MR. GRECO about his appearances at Champion Vending, to which MR. GRECO responded that he is there because the owner owed him money.  Dowd then instructed MR. GRECO to come with him.  He then placed MR. GRECO into a vehicle and was driven to the DA's OFFICE.

101.    At the DA's OFFICE, Dowd repeatedly told MR. GRECO that he knows MR. GRECO works and that MR. GRECO "should play ball."  MR. GRECO emphatically and continually told Dowd that he was not working but was at Champion Vending to collect what was owed to him.  Again, Dowd asked MR. GRECO if he would "play ball" and at that point MR. GRECO asked for an attorney.  Dowd continued to encourage Mr. GRECO to "play ball."  MR. GRECO asked to leave and was escorted back to Champion Vending.

102.    That day, as believed to be reflected from a wire-tap, MR. GRECO called Hale to ask if he was doing something wrong and what he should do.  Hale set up a meeting with MR. GRECO and Lavallee on June 7, 2011.  Lavallee instructed MR. GRECO to tell the Social Security Administration directly that he was receiving income, even though he was not working.  MR. GRECO listened to Lavallee.

103.    On July 28, 2011, a search warrant was executed on both MR. GRECO'S home and Champion Vending.  The search warrant directed those executing it, which included members of the DA's OFFICE, to only recover items that may prove MR. GRECO owned and/or operated a business.  At no point relevant to this period did MR. GRECO own or operate a business.

104.    Dowd was one of the individuals executing this warrant and stated to MR. GRECO in sum and substance: this is what happens when you don't play ball.  While unauthorized by the search warrant, Dowd took $8,300.00 in cash from MR. GRECO'S home as evidence (though it was never vouchered).  MR. GRECO did have this money returned in September of 2016, in a different cash breakdown than when it was taken.

105.    MR. GRECO did not return again to get the money owed to him from Champion Vending.

106.    In September of 2013, MR. GRECO received a manufactured and altered Social Security Continuing Disability Review Report form with a return address to a New York County PO Box.  The form was mailed from the proper Queens County office, yet was returnable to a New York County PO Box.  MR. GRECO filled out and mailed back the manufactured form to the New York County PO Box.

107.    Upon information and belief, after this period, MR. GRECO had been declared an emotionally disturbed person by the New York City Police Department.

**MR. GRECO IS ARRESTED**

108.    On January 7, 2014, MR. GRECO was arrested at his home in Staten Island.  He was then arraigned and paraded in front of the media for the benefit of DEFENDANTS political gain.

109.    DEFENDANTS further froze MR. GRECO'S accounts.  Whereby MR. GRECO was only able to be financial sustained via friends and his pension. This caused MR. GRECO great economic harm.

110.    Upon information and belief, only on or about May 2014 investigators from the DA's OFFICE questioned MR. GRECO'S neighbors.

17

111.    Upon information and belief, the DA's OFFICE sent letters to MR. GRECO'S credit card carriers and said credit cards were subsequently canceled.

**DISMISSAL AND WAIVER**

112.    On August 30, 2016, DEFENDANTS affirmatively dismissed all counts against MR. GRECO.

113.    At the same time, DEFENDANTS, via ADA BHATIA, handed MR. GRECO'S attorney a stipulation that was to be a dismissal of the forfeiture action.  In truth, this document contained a paragraph regarding waving the rights to pursue a Civil Rights matter or any legal action, against the DEFENDANTS.

114.    MR. GRECO attorney handed only the signature page of said document to MR. GRECO, who did not know what he was signing.  MR. GRECO believed that said document would result in the release of the above-mentioned $8,300.00 in cash taken from him home.

115.    MR. GRECO did not know or actually understand what he was signing at the time he was signing it.  Had he known what it was, he would never have signed it.

116.    MR. GRECO maintained his innocence throughout this process.

117.    MR. GRECO has been and is currently taking significant medications to cope with and endure the serious emotional and phycological trauma he has suffered at the hands of the DEFENDANTS. Some of these medications are:  Zolpidem; Sertraline; and Alprazolam.

118.    The DEFENDANTS did not do their proper due-diligence or investigation into this matter. Rather, in a frenzy and excitement for public attention MR. GRECO was wrongly and improperly swept-up in this matter.  His civil rights were violated and both MR. GRECO'S mental and physical health has suffered significantly.

119.    MR. GRECO has lost approximately $150,000.00 in out of pocket expenses because of DEFENDANTS' actions.

120.    Such malicious prosecution, gross negligence, abuse of process, carelessness, resulting in physical and emotions damages, and embarrassment all of which resulted directly from the actions of the DEFENDANTS' abuse of criminal process against the MR. GRECO.

### JOHN BYRNE

121.    MR. BYRNE has been absolutely unable to work since 2008 due to physical and mental health issues.  Some of MR. BYRNE'S health issues are: symptoms consistent with PTSD, anxiety, depression, and hypertension.

122.    From 1986 to 1990, MR. BYRNE served as United States Marine.  MR. BYRNE received an Honorable Discharge from the Marine Corps.  In 1991, MR. BYRNE was activated from reserve status due to Operation Desert Storm.

123.    From 1992 to 2008, MR. BYRNE was employed as a New York City Police Officer.

124.    On the morning of September 11, 2001, MR. BYRNE was assigned to a post near Manhattan. After the terrorist attacks, MR. BYRNE once relieved, went directly to Ground Zero.  In the months following the September 11, 2001 attacks, MR. BYRNE spent a significant amount of his time working at Ground Zero. MR. BYRNE led his command in voluntary appearances at Ground Zero for 2001.

125.    In September of 2007, MR. BYRNE suffered a line-of-duty injury resulting in a torn meniscus.  Ultimately, in 2008 the NYPD Medical Board determined that MR. BYRNE was unable to continue his duties.

126.    MR. BYRNE **has not held any job since**.

127.    As a result of exposure to these events and subsequent events, MR. BYRNE suffers from both physical and psychological illness.

128.    Ultimately, MR. BYRNE was diagnosed with Post-Traumatic Stress Disorder (PTSD), depression, anxiety, and panic attacks as well as hypertension, pain in both knees, herniated disks, asthma, skin lesions and shingles.

**MR. BYRNE MEETS JOSEPH ESPOSITO AND  HALE / BYRNE IS VICTIMIZED**

129.    In 2008, MR. BYRNE was given a telephone number of Joseph Esposito from a fellow retired police officer, who had ties to the NYPD Union.

130.    In or about 2010, MR. BYRNE was taken by Esposito to Hale.  MR. BYRNE filled out the request paperwork and left it with Hale.  Upon information and belief, Esposito and/or Hale altered the application.

131.    Upon undergoing an independent medical examination administered by a Social Security approved physician, MR. BYRNE was determined to be disabled as of July 16, 2010, due to his significant mental health issues.

132.    After the award of disability benefits, Esposito called MR. BYRNE to set up payment. Esposito instructed MR. BYRNE that if he went to the bank and took out a significant sum of money, each time under $9,000.00 in cash, then there would be no further payments.  The total amount was approximately $36,000.00.  Esposito collected the cash directly from MR. BYRNE.

133.    MR. BYRNE accepted the offer, trusting in a fellow-retired officer who he believed was looking out for him, and so paid Esposito in cash as instructed.

134.    Upon information and belief, Esposito then gave the money, or a sum of it, to Hale.

## CONTINUING DISABILITY

135.    On or about and between 2011 and 2012, MR. BYRNE was declared a disabled veteran by the United States Veteran's Administration.

## MR. BYRNE IS ARRESTED

136.    On January 7, 2014, MR. BYRNE was arrested at his home in Queens, New York.  He was then arraigned and paraded in front of the media by DEFENDANTS.

137.    DEFENDANTS further froze MR. BYRNE'S account and credit cards. This caused MR. BYRNE great economic harm.

138.    After being arrested, MR. BYRNE was told that his claim of disability was fraudulent because DEFENDANTS had observed him driving a car twice.  There was no other basis articulated.  MR. BYRNE explained that in both those situations, he had no option but to drive the vehicle.

139.    Upon information and belief, following the indictment, investigators working for the DA's OFFICE, Gerald S. Bergold and Michael O'Brian (hereinafter "DA Investigators"), upon instruction from their superiors, spoke to MR. BYRNE'S neighbors, friends and family about the indictment.

140.    Upon information and belief, The DA Investigators, uncovering that MR. BYRNE was actually innocent, informed said neighbors, friends and family that they should speak with MR. BYRNE and convince him to take a plea bargain and avoid going to trial.

## MULTIPLE PSYCHOLOGICAL EXAMS

141.    MR. BYRNE'S mental health was in such a poor state that he was made to undergo a C.P.L. 730 exam as well as multiple other psychological examinations.

142.    In 2014, 2015, and 2016, post-indictment, MR. BYRNE was subject to multiple different mental health evaluations.  The Court in 2015 also examined MR. BYRNE *sua sponte* and it was determined that he had a disabling psychiatric impairment.  The DA's Office itself had MR. BYRNE

examined in early 2016 and reached the same conclusion.  Yet, the DA's OFFICE did not dismiss the case until August 30, 2016.

143.    The DEFENDANTS actions only furthered injury to MR. BYRNE'S already fragile mental health.

## DISMISSAL AND WAIVER

144.    On August 30, 2016, DEFENDANTS affirmatively dismissed all counts against MR. BYRNE.  Due to his significant mental health issues, MR. BYRNE had been excused from further appearances before the court and was not present on August 30, 2016.

145.    At the same time, DEFENDANTS, via ADA BHATIA, handed MR. BYRNE'S attorney a stipulation that was to be a dismissal of the forfeiture action.  In truth, this document contained a paragraph regarding waving the rights to pursue a Civil Rights matter or any legal action, against the DEFENDANTS.

146.    MR. BYRNE'S attorney, without permission or authority, signed the above-mentioned document for MR. BYRNE.

147.    Had MR. BYRNE known about this, he would have never allowed his attorney to do so.  The DEFENDANTS did not do their proper due-diligence or investigation into this matter.  Rather, in a frenzy and excitement for public attention, MR. BYRNE'S emotional and physical health has suffered significantly.

148.    Such malicious prosecution, gross negligence, abuse of process, carelessness, resulting in physical and emotions damages, and embarrassment; all of which resulted directly from the actions of the DEFENDANTS' abuse of criminal process against the MR. BYRNE.

149.    MR. BYRNE maintained his innocence for the entirety of this matter.

150.   MR. BYRNE has lost approximately $150,000.00 in out of pocket expenses because of DEFENDANTS' actions.

151.   MR. BYRNE has been, and is, currently taking medication to cope with and endure the serious emotional and phycological trauma he has suffered at the hands of the DEFENDANTS.  Some of these medications are:  Alprazolam.

152.   As of the date of this filing, MR. BYRNE'S Credit Cards are still frozen and his bank has refused his business.

153.   As for all PLAINTIFFS, but for the DEFENDANTS actions they would not have suffered the severe and continuing emotional and mental health injuries as well as economic harm which were a direct result of DEFENDANTS actions.

### AS AND FOR A FIRST COUNT
**42 U.S.C. § 1983**
**Fourth, Fifth, and Fourteenth Amendments**

154.   PLAINTIFFS repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 153 of this Complaint with the same force and effect as if fully set forth herein.

155.   Under color of law, the DEFENDANTS, their agents, employees and servants deprived the PLAINTIFFS of their Fourth, Fifth and Fourteenth Amendment rights to protection from unlawful seizure in the form of unreasonable seizure of their property, Equal Protection and Due Process.

156.   PLAINTIFFS due process was further violated when the DEFENDANTS knowingly and willfully conducted an incomplete and lackluster investigation.

157.   Any one of the INDIVIDUAL DEFENDANTS should have and could have prevented the wrongs PLAINTIFFS suffered from occurring.

158.   The INDIVIDUAL DEFENDANTS allowed for and encouraged the abuse of process on PLAINTIFFS.

159.    The INDIVIDUAL DEFENDANTS further participated in the abuse of process by trying to cover-up their wrongdoing by offering significantly reduced plea agreements and ultimately attempting to have the PLAINTIFFS waive their right to sue.

160.    At no point did the INDIVIDUAL DEFENDANTS come forward or try to correct the wrongs and civil rights abuses that PLAINTIFFS were subject to.

161.    At no point did the INDIVIDUAL DEFENDANTS follow their sworn duty to protect the public from wrongful prosecutions and unjust abuse.

162.    As a consequence of the DEFENDANTS, collectively and individually, unconstitutional actions, grossly negligent behavior, and violation of State and Federal laws, PLAINTIFFS were deprived of their freedom; were subject to great mental and emotional harm; were made to suffer pain and continue suffering; and were subjected to great fear, terror, personal humiliation and degradation; and continue to suffer pain and mental and emotional distress as a result of the aforesaid unlawful conduct of DEFENDANTS, their agents, employees, and servants.

163.     The wrongful accusations of Grand Larceny in the Second Degree and Criminal Facilitation in the Fourth Degree against PLAINTIFFS were false and were a negligent and wrongful indifference to proper investigation, as well as the deliberate indifference to PLAINTIFFS protected civil rights.

164.    The DEFENDANTS, their agents, employees and servants acted under color of law to deny PLAINTIFFS their constitutional rights to due process and freedom from unlawful seizures in the form of false imprisonment, unlawful proper seizures and wrongful malicious prosecution.

165.    Without any reasonable or rational basis for this conduct, the rights secured to PLAINTIFFS by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution were violated.

24

166.    Due to the above actions and unlawful conduct, PLAINTIFFS have suffered significant economical and emotional harm.

167.    By reason of the foregoing, PLAINTIFFS have been damaged.

## AND AS FOR A SECOND COUNT
### 42 U.S.C. § 1983
### Municipal Liability

168.    PLAINTIFFS repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 167 of this Complaint with the same force and effect as if fully set forth herein.

169.    In actively inflicting and failing to prevent the above stated abuses incurred upon PLAINTIFFS of abuse of process, false imprisonment, disregard to proper training of Assistant District Attorneys, negligent infliction of emotional distress and gross negligence; the DEFENDANTS acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of PLAINTIFFS against illegal seizure in the form of freezing PLAINTIFFS accounts, detained custody and other due process violations.

170.    Said civil and constitutional rights are guaranteed to PLAINTIFFS by 42 U.S.C. § 1983 and by the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

171.    NEW YORK CITY exhibited gross negligence and deliberate indifference to PLAINTIFFS by allowing the INDIVIDUAL DEFENDANTS to conduct and engage in the investigative process in the context of being an Assistant District Attorney.

172.    This gross negligence directly resulted in the appalling wrongs done unto PLAINTIFFS by the INDIVIDUAL DEFENDANTS.

173.    Further, abuse of process continued by NEW YORK CITY for their refusal to properly investigate or take action on the charges of abuse and gross negligence against the DEFENDANTS (collectively and individually).

25

174.    Such abuse of process was continued by the DEFENDANTS, their agents, servants, and employees in their refusal to adequately investigate, review and take action regarding the abuse and unlawful actions that INDIVIDUAL DEFENDANTS perpetrated on PLAINTIFFS.

175.    Both before and after January 7, 2014 and August 30, 2016, NEW YORK CITY has permitted, tolerated, and encouraged a pattern and practice of unjustified, unreasonable, and illegal abuses and arrest of persons by those within and in charge of the DA's OFFICE of NEW YORK CITY and the wrongful detention of such persons.

176.    Although such prosecutorial conduct was improper, said incidents were covered up by NEW YORK CITY, its agents, employees and servants by official claims that's the DA's OFFICE's gross negligence, unlawful seizures and abuse of process were justified and proper, or by leveling false charges against the persons who were victims of said gross negligence, unlawful seizures and abuse of process, so as to insulate the offending prosecutors and other officials from prosecution and liability.

177.    Said charges and official claims have been fully backed by NEW YORK CITY, which has repeatedly and unreasonably sided with the abuse of persons so affected in far too many cases, despite vast evidence of wrongdoing by its prosecutors against individuals, including PLAINTIFFS herein.

178.    Additionally, NEW YORK CITY has systematically failed to identify the improper abuse, misuse, volatile acts and unethical conduct by prosecutors and officials, while further failing to subject such prosecutors and officials to discipline, closer supervision or restraint.

179.    Upon information and belief, specific systemic flaws in the NEW YORK CITY misconduct review process include, but are not limited to, the following:

       i.    Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the prosecutor's actions regardless of whether such actions are justified;

    ii.   Prosecutors investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers and other officials involved in the unwarranted incidents;

   iii.   Prosecutors investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

   iv.   Supervisory prosecutors exonerate offending prosecutors for misconduct and abuse of process before the investigation of the incident by the prosecutor's office has been completed;

    v.   NEW YORK CITY and its DA's OFFICE hastily accepts the reports as provided regarding abuses and civil rights infringements, despite evidence to suggest that the such reports are inaccurate, untruthful and meant to conceal blatant prosecutorial misconduct.

180.   Said cover-up by the NEW YORK CITY, was executed in this case where NEW YORK CITY, its agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of prosecutor's investigation statements and instead acted under color of statue to knowingly, recklessly and/or negligently impose false charges upon PLAINTIFFS.

181.   By permitting and assisting such a pattern of prosecutorial misconduct, NEW YORK CITY, acted under color of custom and policy to condone, encourage and promote the deprivation of PLAINTIFFS Fourth, Fifth, and Fourteenth Amendment rights.

182.   The actions of the INDIVIDUAL DEFENDANT, in inflicting emotional and economic injury, unto PLAINTIFFS was a direct result of NEW YORK CITY's failure to train and supervise the INDIVIDUAL DEFENDANTS, who were each acting under color of law and pursuant to the objectives of NEW YORK CITY.

183.   NEW YORK CITY should have known that such failures and gross negligence would cause the precise economical, emotional, and civil rights injuries suffered herein in by PLAINTIFFS.

184.    As a direct consequence of the NEW YORK CITY's systemic practice, pattern, and custom of intentionally or recklessly promoting and supporting officers' and officials' violations of 42 U.S.C. § 1983, PLAINTIFFS were deprived of their freedom and subject to extensive economical and emotional harm.

185.    As a proximate cause of NEW YORK CITY, its agents, and employees, supporting and effectively promoting the very same police abuses which occurred against PLAINTIFFS, PLAINTIFFS were subjected to great fear, personal humiliation and degradation, with wanton disregard for the harm and damage done to the economical and emotional wellbeing of PLAINTIFFS.

186.    By reason of the foregoing, PLAINTIFFS have been damaged.

### AS AND FOR THE THIRD CAUSE OF ACTION
**Article 1, Section 11 of the New York State Constitution**

187.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 186 of this Complaint with the same force and effect as though fully set forth herein.

188.    DEFENDANTS, acting under color of law, in woeful dereliction of their obligations and a complete lack of investigation, indicted and arrested PLAINTIFFS without true lawful justification.

189.    Such actions, as articulated above, did cause specific and serious harm to PLAINTIFFS in violation of their New York State Constitutional rights as so guaranteed by Article 1, Section 11.

190.    DEFENDANTS actions and conduct were a direct and proximate cause of injury and damage to PLAINTIFFS and violated their rights as guaranteed by the New York State Constitution.

### AS AND FOR THE FOURTH CAUSE OF ACTION
**Article 1, Section 12 of the New York State Constitution**

191.    PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 190 of this Complaint with the same force and effect as though fully set forth herein.

192.    DEFENDANTS, acting under color of law, in woeful dereliction of their obligations and a complete lack of investigation, subjected PLAINTIFFS, without true lawful justification, to seizure of both body and property.

193.    Such actions, as articulated above, did cause specific and serious harm to PLAINTIFFS in violation of their New York State Constitutional rights as so guaranteed by Article 1, Section 12.

194.    DEFENDANTS actions and conduct were a direct and proximate cause of injury and damage to PLAINTIFFS and violated their rights as guaranteed by the New York State Constitution.

## AS AND FOR THE FIFTH CAUSE OF ACTION:
### Malicious Prosecution

195.    The PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1through 194 of this Complaint with the same force and effect as though fully set forth herein.

196.    The INDIVIDUAL DEFENDANTS lacked probable cause, proper evidence, and any proof whatsoever to detain both the physical and economical bodies of PLAINTIFFS.

197.    Any reasonable prosecutor in a similar situation as the INDIVIDUAL DEFENDANTS, would have come to realize that the PLAINTIFFS were in fact victims of others.

198.    The subsequent malicious prosecution of PLAINTIFFS was conducted by DEFENDANTS with knowledge that PLAINTIFFS were wrongfully arrested and actually innocent.

199.    Such malicious prosecution was committed by Collective DEFENDANTS under color of law, customs, and statutes of the State of New York.

200.    Under color of law, the DEFENDANTS deprived PLAINTIFFS of their rights to protection from unlawful search and seizure by falsely charging them criminally and prosecuting PLAINTIFFS pursuant to such criminal statutes, **for which there is no evidence or substantiation to support the allegations.**

201. Moreover, all charges were terminated in favor of PLAINTIFFS.

202. The accusations of wrongful actions leveled against PLAINTIFFS were false and were an attempt by the DEFENDANTS, acting individually and collectively, to cover up the negligence and careless investigation and abuse of process which has been inflicted by DEFENDANTS upon PLAINTIFFS.

203. DEFENDANTS collectively and individually initiated the prosecution of PLAINTIFFS and/or caused the initiation of said prosecution based upon their affirmative bad-faith actions outlined above.

204. As a consequence of DEFENDANTS, collective and individual, wrongful actions, gross negligence, and violations of New York State law PLAINTIFFS was deprived of their freedom, was made to suffer physical and emotional injuries, was caused to suffer special damages, including legal fees and medical costs; was subject to great fear, terror, personal humiliation and degradation.

205. By reason of the foregoing, PLAINTIFFS have been damaged.

## AS AND FOR THE SIXTH CAUSE OF ACTION:
### Abuse of Process

206. The PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 205 of this Complaint with the same force and effect as though fully set forth herein.

207. DEFENDANTS, intentionally, recklessly, and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading indictment against PLAINTIFFS

208. The criminal complaint was made by the aforementioned DEFENDANTS with knowledge that the indictment was untruthful.

209.    The false indictment lodged by DEFENDANTS was brought forth with knowledge that the facts and investigation leading to said indictment and contained therein were false, misleading and/or otherwise inaccurate.

210.    DEFENDANTS abused the criminal process for the sole purpose/motive to cover up their negligent and improper investigative process as well as political gain in this high-profile media case.

211.    DEFENDANTS, with knowledge of the inaccuracy and/or falsity of said indictment made by DEFENDANTS without any investigation and/or rudimentary query, based upon facts existing at all time relevant to the indictment; intentionally, recklessly and maliciously caused to be filed said false, inaccurate, and/or misleading criminal complaint against PLAINTIFFS.

212.    Said indictment process was made by the aforementioned DEFENDANTS without any actual research and investigation into the veracity and/or truthfulness of the charges presented and indicted upon.

213.    The subsequent malicious prosecution of PLAINTIFFS was done by DEFENDANTS with the knowledge that such acts contained therein were false, misleading and/or otherwise inaccurate.

214.    DEFENDANTS were motivated to engage these wrongs by self-serving ideas of self-preservation to insulate both politically and for the sake of keeping the line by not arguing with superiors.

215.    DEFENDANTS clear intention was to falsely arrest, falsely prosecute and to cause harm to PLAINTIFFS without proper motive, excuse, or justification of any kind.

216.    DEFENDANTS use of the criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of PLAINTIFFS solely for a purpose that was/is outside the legitimate ends of the criminal process; the cover-up of clear prosecutorial misconduct.

217.    As a direct consequence of the DEFENDANTS' (collectively and individually) wrongful actions, grossly negligent behavior, violation of state and federal laws, PLAINTIFFS were deprived of their freedom, subject to false criminal arrest, subject to malicious prosecution, made to suffer great personal emotional injuries, made to suffer financial/monetary injuries, subjected to great fear, terror, personal humiliation and degradation, and continues to suffer pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the DEFENDANTS.

218.    That by reason of the foregoing, PLAINTIFFS have been damaged.

## AS AND FOR THE SEVENTH CAUSE OF ACTION:
### Gross Negligence

219.    The PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 218 of this Complaint with the same force and effect as though fully set forth herein.

220.    The INDIVIDUAL DEFENDANTS, each of them in their individual and official capacities had a duty under New York State's Constitution and the Constitution of the United States to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious prosecution and false charging and other wrongful acts that were committed against PLAINTIFFS.

221.    The INDIVIDUAL DEFENDANTS, each of them in their individual and official capacities, and NEW YORK CITY, have a duty to conduct proper investigations with regard to all criminal matters to assure that such criminal complaints are accurate and truthful.

222.    DEFENDANTS are required to undergo any and all investigative procedures reasonably available to make sure persons, like PLAINTIFFS, are not falsely/wrongfully arrested and charged.

223.    DEFENDANTS have a duty to arrest and prosecute individuals only when there is probable cause to effect and arrest and/or subject a person to said prosecution.

224.   DEFENDANTS failed with respect to all of the above mentioned duties owed to PLAINTIFFS.

225.   As a direct proximate cause of DEFENDANTS failures, PLAINTIFFS were caused to suffer great harm, including but not limited to, physical and mental anguish, emotional pain and suffering, legal costs and fees, false arrest, criminal prosecution, confinement, and other injuries/damages all of which were foreseeable and reasonably foreseeable by DEFENDANTS.

226.   PLAINTIFFS would not have suffered any of the above-mentioned injuries, but for DEFENDANTS breach of duties and failures.

227.   In actively inflicting and failing to prevent the above stated abuses incurred by PLAINTIFFS, DEFENDANTS acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of PLAINTIFFS against illegal search and seizure, detained custody and arrest without other due process violations.

228.   Said rights are guaranteed to PLAINTIFFS by the New York State Constitution and the United States Constitution.

229.    The breach of duty under the New York State Constitution by the INDIVIDUAL DEFENDANTS was a direct and proximate cause of the harm suffered by PLAINTIFFS. Said harm include, pain and suffering, personal humiliation, and emotional and psychological damage.

230.   By reason of the foregoing, PLAINTIFFS have been damaged.

### AS AND FOR THE EIGHTH CAUSE OF ACTION:
**Vicarious Liability / Respondent Superior**
**(Against NEW YORK CITY and DA VANCE)**

231.   The PLAINTIFFS repeat, reiterate and re-alleg each and every allegation contained in paragraphs 1 through 230 of this Complaint with the same force and effect as though fully set forth herein.

232. All of the above-mentioned improper actions taken by the INDIVIDUAL DEFENDANTS were committed while they were acting in furtherance of NEW YORK CITY official business.

233. All of the above mentioned improper actions taken by the INDIVIDUAL DEFENDANTS were committed while acting within the scope of their authority and assigned duties as employees, agent, and officers for NEW YORK CITY.

234. NEW YORK CITY knew and/or should have known that said improper activity and blatant violations of PLAINTIFFS constitutionally secured rights were taking place by its employees while acting within the scope of their assigned duties.

235. The INDIVIDUAL DEFENDANTS filed and/or caused to be filed, false/perjured statements pertaining to the indictment of PLAINTIFFS.

236. The above stated willful, reckless, negligent action taken by the INDIVIDUAL DEFENDANTS against PLAINTIFFS, while acting within the scope of their authority was foreseeable and/or should have been reasonably anticipated by NEW YORK CITY as well as DA VANCE.

237. NEW YORK CITY and DA VANCE are responsible and/or liable to PLAINTIFFS for each and every above-described acts committed by the INDIVIDUAL DEFENDANTS while acting within the scope of their authority as employees, agents, and law enforcements officers for THE CITY OF NEW YORK and under DA VANCE.

238. As a direct result of DEFENDANTS grossly negligent acts, PLAINTIFFS suffered and are entitled to damage sustained to date.

## AS AND FOR THE NINTH CAUSE OF ACTION:
### False Arrest and False Imprisonment

239. The PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1through 238 of this Complaint with the same force and effect as though fully set forth herein.

240.    For an arrest to stand there must be reasonable cause to believe that a crime has been committed.

241.    False imprisonment is present when one intentionally takes the freedom of movement away from another without cause or justification.

242.    There was no reasonable cause present when the DEFENDANTS falsely caused the arrest of PLAINTIFFS in violation of his Fourth Amendment right to be free from unreasonable seizures.

243.    There was no crime being committed when DEFENDANTS caused the arrest of PLAINTIFFS.

244.    INDIVIDUAL DEFENDANTS falsely arrested PLAINTIFFS due to improper and inaccurate investigation for the sake of political and status gain, without cause, reason or justification.

245.    DEFENDANTS, via their agents intentionally restrained PLAINTIFFS by handcuffing them and restricting their movement.

246.    PLAINTIFFS were at a loss of their freedom because of the unjustified restraints that DEFENDANTS placed on them.

247.    As a direct result of DEFENDANTS false arrest and false imprisonment of PLAINTIFFS suffered extensive emotional distress and has been damaged.

## **PUNITIVE DAMAGES**

248.    The PLAINTIFFS repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 247 of this Complaint with the same force and effect as though fully set forth herein.

249.    The acts of the DEFENDANTS were willful, wanton, malicious and oppressive and were motivated solely by a desire self-gain, thereby harming PLAINTIFFS, without regard for PLAINTIFFS wellbeing, and were based on a lack of concern and self-centered political gain. Such acts therefore deserve an award of punitive damages.

**WHEREFORE**, PLAINTIFFS demand judgment against DEFENDANTS:

    a.   Special and Compensatory Damages in the amount of $30,000,000.00;

    b.   Punitive Damages;

    c.   An order granting such other legal and equitable relief as the court deems just and proper; and

    d.   Award costs of this action including attorney's fees to the PLAINTIFFS.

<u>**A JURY TRIAL IS HEREBY DEMANDED**</u>

Pursuant to Fed. R. Civ. P. 38, PLAINTIFFS collectively hereby request a trial by jury for all issues so triable.

Dated:     January 4, 2016
          New York, New York

                              Respectfully Submitted,

                              **The Law Office of**
                              **Jacob Z. Weinstein, PLLC**
                              *Attorney for Plaintiffs*

By:    _____/s/_____
           JACOB Z. WEINSTEIN, ESQ. (JW6133)
           545 FIFTH AVENUE
           SUITE 840
           NEW YORK, NY 10017
           TELEPHONE:   (646) 450-3484
           FACSIMILE:    (646) 774-0368
           E-MAIL: jzw@jzweinsteinlaw.com